Morning, Appeal No. 25-1837, Dove v. the Indiana Department of Corrections. We welcome Ms. Boyd to the podium. Good afternoon, Your Honors. I may appease the Court. My name is Amber Boyd, and I represent the appellant in this matter, Daniel Dove. Your Honors, I would like to reserve five minutes for rebuttal. The District Court made five fundamental errors that deny Mr. Dove a jury trial. First, the Court applied a heightened background circumstances requirement that the Supreme Court has expressly rejected in Ames v. Ohio. Second and third, the Court determined that no reasonable jury could find Mr. Dove qualified for the promotion or that the promoted employee was less qualified or similarly qualified, despite evidence to the contrary. Fourth, the Court concluded that no reasonable juror could infer retaliation, despite two instances of escalating retaliation. And fifth, the Court failed to consider housing replication as a part of the intolerable conditions that forced Mr. Dove to resign. Each error involved the Court weighing evidence, choosing between inferences, and making credibility determinations. These are jury functions. We ask this Court to reverse and remand for trial. Your Honors, would you all like a brief presentation of the facts? Now, could you tell us, Ms. Boyd, as I understand it, Mr. Dove's position was that he was still a trainee correctional officer when he left the department. Is that correct? Yes, Your Honor. Can you point us to any evidence indicating that any trainee has been promoted directly into a supervisory sergeant position? No, Your Honor, and I think in Mr. Dove's case, this is particularly different, and that's because of his military experience. I understand he thinks the department should have given him more credit for his military experience, but also DOC has its own special challenges, and that's why I was asking whether they have ever taken somebody from being a trainee for a position to making them a supervisor over the positions he was training for. To my knowledge, Your Honor, no, that has not happened. But from the evidence that was presented, that it wasn't something that could not happen. Seeing that the IDOC has a requirement and a policy that says that they have some supervisory experience previously, especially in terms of Mr. Dove, he had military experience. Right, but he didn't have any experience in the position for which he would have been supervising others, right? Correct, Your Honor. He had no experience in the specific position, but the IDOC's policy is to credit Mr. Dove for his military experience, and they give him one year of credit for a correctional officer. It comes to our surmise that they wouldn't do that unless they believe that his military experience was equivalent to at least one year of being a correctional officer. Now, I believe, Your Honor, that the district court error would have treated this case as a reverse discrimination and required Mr. Dove to prove background circumstances showing IDOC had a reason to terminate against white employees. First, the court stated... You're clearly correct about that. Okay. But Judge Stinson also said, that's not how I'm deciding the case, and then went on to treat it as if it were a straight discrimination case, right? Well, Your Honor, Judge Stinson does articulate the law and articulates that Mr. Dove did not meet the standard for that element of the case, and then proceeds to say that Mr. Dove was not qualified for the position, and that someone more qualified for the position was selected for the position. In regards to the court's determination that Mr. Dove was not qualified for the position, that's where we also believe that the district court error determined that no reasonable jury could find Mr. Dove qualified for the correctional sergeant position. The court focused really almost exclusively on Mr. Dove's August 2021 application, and with that, his email regarding that application. The court cherry-picked the information that was provided in that October 2021 email, saying that Mr. Dove himself did not believe he was qualified for the position. But the issue, the promotion decision at issue in this case, occurred in November of 2021, after Mr. Dove had gained more experience in the position that he was in. So you're not pursuing the August application any further? No, Your Honor, we're pursuing exclusively the decision that occurred on November 2021. There was substantial evidence that Mr. Dove was qualified, and that a reasonable jury could find those qualifications based on, one, his military experience. He was a squad leader in Iraq and led combat missions. His supervisory experience that he previously had testified that he had... I do think we follow Mr. Dove's argument there about why he believed he was more qualified or qualified enough for the job to be selected. What's your best argument about how the IDOC, overlooking, in your view, in Mr. Dove's view, this experience is pretext for discrimination? Well, they didn't take it into account at all. What they did was they disregarded his experience and said that he was not experienced. But their own policy states that years of military experience says that he gets that COO credit, those 12 months. Not only that, when we look at who received that position, we would do that comparator analysis. Her name was Jaco. I'm going to shorten it, Jaco. And when you compare her to Mr. Dove, they are similarly qualified for the position, and that's how we can prove pretext in this case. Can you infer pretext from simply making a choice between two comparably qualified people? I think you can infer pretext when those are individuals outside their protected class who are being treated more favorably. Under my hypothetical, you have to promote one of them, right? Yes, Your Honor. So does the other one then have a claim? That it gets to a jury? The other one could possibly have a claim. That can't be right. Well, it depends on the basis for their determination. If the company states that the basis for the third to promote is based on experience and that other individual can show, well, I have actually more experience than this person, so that cannot be the correct claim. Jaco did, but that's a different claim. But I thought you were telling us that you think they were comparably qualified. And I'm saying if you indulge that assumption, then it sounds like the choice as between the two of them gets to a jury regardless of the choice made. And I don't understand how that can be the law. I'm saying pursuant to the elements that they are similarly qualified, but Mr. Dubb is actually more qualified when you look at the experience that he has compared to Jaco. When you look at his military experience, how it was the 12 months as credited as CO experience. When you look that he did have supervisory experience and Jaco did not have supervisory experience. When you looked at the fact that his supervisor said that he had strong performance and praised his policy knowledge. When you look at the fact that he was also on emergency response teams, those things were not credited. Can I move you on before we run out of time before your rebuttal to constructive discharge? I'm looking for your arguments at summary judgment in your response and also in your brief. Any argument you've made under the two methods that our circuit recognizes for establishing constructive discharge? Well, I think what we're looking at is the fact that the company knew that Mr. Dubb needed that housing. He needed housing in order for him to remain in the position. And then when you look at the totality of the situation, when it comes to the hostile meeting, the denial of his transfers, putting him in a less desirable assignment, and also a housing revocation. Putting that all together, it bears to mind that they put Mr. Dubb in an intolerable situation that a reasonable person would have to resign. Is he disputing whether he understood the housing was temporary from the beginning? No, Your Honor. He's not disputing that he knew that the housing was temporary. What is at dispute in this case is the fact that Mr. Dubb was never told what length of time he could stay in the housing. Not only that, Your Honor, there was a substantial amount of time passing from when there was any communication about the housing. There was one communication in August. There was another communication in November. Neither communication that he received said that he would have a limited amount of time or he'd need to be out in a month. What happened was Mr.— Can I also ask you about the—I think you're referring to the assignment to Unit A. Yes, Your Honor. Which is probably one of the toughest assignments in the facility. That's what Mr. Dubb's belief was. Right. Are there CO—correctional officers who are never assigned to Unit A? I thought that would be part of the job, particularly if you want to supervise COs. Well, I think one of the issues is once he complained about it, that's when he was assigned to that position. And there was no other reason to assign him at the time, especially when you're looking at what his assignment was. So just that switch, that big switch and change of his job duties and his assignment after he complained. Does he contend that that was outside of his duties? No, not outside of his duties. But that when you place someone in a less desirable situation or assignment can give evidence to some form of retaliation. Do you want to reserve the remainder of your time?  Thank you. All right. Will you welcome to the podium Ms. Recker? Thank you. May it please the court. The department asks that this court affirm the summary judgment order because Mr. Dubb has not proven that the department discriminated against him, retaliated against him, or subjected him to conditions that require a reasonable person to quit his employment. First, I'd like to start with Mr. Dubb's discrimination claim. Mr. Dubb argues in his brief that there's dispute of fact as to whether he was qualified for the position and whether Ms. Jaco was less qualified or similarly qualified. But he does not address the pretext argument. And in order for Mr. Dubb to win on his discrimination claim, he must show that the department's reasoning was pretextual. Here he cannot do that because the department's reasoning for not hiring him was because they chose someone that they felt was better suited for the job. So in order for him to show pretext, he must show that he is significantly more qualified than Ms. Jaco. But the evidence does not show that. Instead, the evidence shows that Ms. Jaco had been a correctional officer since April 2020, which was 15 months at the time of the November interview. She had supervisory experience as a correctional officer, training other correctional officers. She was also on the quick response and shakedown teams. Whereas Mr. Dubb had only been a correctional officer for four months at the time of the November interview. Let me ask you about how Mr. Dubb might have known what the qualifications were for the position as he was applying. Because what we do have on the record is, you know, somebody's encouraging him to apply. All right. Does IDOC have a publicly available position description? Or is the only way to learn about the qualifications and how much on the job training he might have needed from current people at IDOC? I believe there is a job posting when you when you apply. It usually has the qualifications that job posting is not in the record in this case. So what we have to go on is the deposition testimony of Lieutenant Bryant, who was on the panel who interviewed Mr. Dubb. And then as for Ms. Boyd's point that he was to understand that his year of military service would be the functional equivalent of a year of correctional officer experience. Do you want to respond to that? Yes, I believe that that was Mr. Dubb's belief. I'm not sure he didn't submit a specific policy in the record. And I don't know. I think that may have been from his own deposition testimony, but I can't remember that for sure. But Mr. or Lieutenant Bryant, as well as the other department employees who testified to provide deposition testimony, testified that it was important for a correctional sergeant to have experience in the facility. So while military experience may be valuable, it's not relevant or not specific enough to running a prison, to overseeing offenders, to also training other correctional officers to do their job. Mr. Dubb, as I said, had only been a correctional officer for four months. He had not yet. I thought he was still a trainee. Yes, he was still a correctional officer trainee. Yeah. But for only four months. So he was still learning to do the job himself. So he wasn't qualified to teach other correctional officers. I heard Ms. Boyd say that, but I thought I read somewhere here, and I can't pinpoint it, that he got out of training at a certain point before he left his job. Well, he has. The first training is where you're out of the facility. So you're at the Correctional Training Institute or somewhere else. I believe his training was not at the Correctional Training Institute. I thought he testified in his deposition that he was still a trainee when he left. Yes, he did. He testified he was still a correctional officer trainee. Oh, he was done with the off-site correctional training, but still a trainee at the prison. Correct. When I left, I was still classified as a correctional officer trainee. Yes. Page 115 of his deposition. Yes. Another thing that Mr. Dove specifically testifies to is that it's important for correctional sergeants to have experience implementing the department's policies, and Mr. Dove hadn't yet responded to an emergency or an assault call, and he agreed that a correctional sergeant would need to know how to do that. Let me skip you to another place since we do have limited time together. Before February 23rd, was he ever told that he'd have to move out by March 1? Was he ever given an end date? And so why doesn't Mr. Dove have a point that the timing looks awfully fishy that he understands it's temporary, but he's never, ever given an end date, and then he's finally given a one-week end date shortly after he does some complaining? It's correct that he was never given the March 1st date. However, there were emails, several emails to him, indicating that he needed to find permanent housing. The first email he actually got in July prior to even starting as a correctional officer or having training indicated that he needed to find housing as soon as possible. And then in August, Mr. Andrick, who was the officer— Let me skip to my question. So you've agreed he didn't have any notice before February 23rd he'd have to move out March 1st. So address the timing issue.  And our argument is that there's no notice that he specifically had to move out by March 1st, but he knew for several months that the housing was temporary, that he needed to find a place to stay. I mean, the department offered the housing as a way for him to move here from Michigan. Why isn't the timing suspicious since it's on the hills? It's just by two days. That's some of the activity in this case. Your Honor, the timing is not suspicious. So there's actually—there were two different complaints. There was a complaint in January 19th, and then the email that Mr. Andrick sent Dove wasn't until February 23rd. But there was another complaint Mr. Dove made on February 15th. That complaint was directed specifically to the commissioner and the deputy commissioner of the Department of Correction. Warden Knight was not copied on that email, nor was Operation Manager Andrick. So there's no evidence in the record that either one of them knew of the February 15th complaint. And there's really no evidence that Mr. Andrick even knew of the January 19th complaint. So the timing is not suspicious because if you're going based on the January complaint, there's just too much of a gap there. And then also, the temporal proximity can be explained or doesn't support a causal connection if there is a legitimate explanation. And here, as I said, the email showed that the department communicated with him on multiple occasions, indicating that the housing was only meant to be temporary. At the point of the February email, he had been there for seven months at that time. So he had seven months to find housing. He knew at the beginning he needed to do it. They offered it so that way he could move from Michigan to Correctional Industrial Facility, which is in Pendleton, Indiana, assuming that he would, you know, work for a couple weeks, get a couple paychecks, and be able to make a— You are right that there is no evidence that Knight communicated with the folks, the upper folks and the commissioners about his complaint. But, you know, we've already said that plaintiffs can use circumstantial evidence and, you know, bits and pieces from which a reasonable jury could draw some inferences. Okay? So why do we need knowledge here that the commissioners spoke directly with Knight and Andrick, especially since with the prior complaint, we do have Knight speaking with Andrick. So there's always a pattern of Andrick gets word from somebody that something's going on with Mr. Dove, and then all of a sudden here's an email to Mr. Dove inquiring about his housing. When are you getting out? Your Honor, this court's case law says that the decision-maker needs to have actual knowledge of the complaint. That way we can determine that the action that was taken was a result of the protected activity. Otherwise, there's no evidence showing that this was retaliation. And I think that's the Jovich case, I believe. I cited it in my brief. So there's no evidence here that— So in the housing, who's the decision-maker? Mr. Andrick was the one, the operations manager with the department. He wasn't with the facility. He was with the department. He's the one that had been communicating with Mr. Dove, and he's the one that sent the February 23rd email. There was an email on February 17th from Knight to Mr. Andrick asking if Dove was still at CTI. In her deposition, she testified that the email was not to indicate that he should ask that Dove should move out, but just to see if he was still there because they'd had communication about him transferring up north. And she was curious as to whether he was still there. But Mr. Andrick was the one who determined the housing. Warden Knight did initially approve the housing. So there's no evidence of causal connection. But also, it's not an adverse action, which you'd also have to establish to support his retaliation claim because, as I've said, he knew all along that the housing was temporary, that he needed to leave, and he stayed there for seven months. Also, I wanted to mention he points out in his appellant's brief that him being required to work in restrictive housing was an adverse action. He did not raise that below specifically in his retaliation claim. So we believe that it's waived. But also, it's not adverse because, as a correctional officer, it's part of his job duties to work in restrictive housing. And actually, Warden Knight also testified in her deposition that whether an officer has worked in restrictive housing is something they look for when promoting them to sergeant. So it's important for him to get that experience in order to progress. And then along the same lines for the constructive discharge claim, he bases that on being asked to move out of housing as well as having to work in a restrictive housing unit. Mr. Dove's counsel stated at the beginning of her argument that the district court didn't address in the constructive discharge argument the requirement that he move out of housing, but the district court did address it. I believe it's page 19 of its opinion because that was the primary basis for his constructive discharge claim. But in his summary judgment briefing, he didn't connect the requirement that he move out with a protected activity or discrimination. Does this court have any further questions? Okay. It doesn't look like it. Well, thank you. I think the state asks that you affirm the summary judgment order. Again, there's no evidence of discrimination or retaliation. Okay. Thank you. Thank you, Ms. Reker. And Ms. Boyd. First, Your Honors, regarding the pretext argument, the district court didn't get to pretext because they determined that Mr. Dove could not meet his pre-proposal case, but embedded in the comparator analysis that we completed in the brief, it's very clear that we're talking about how their decision was unworthy of credence, which is a pretext standard. Also, regarding the retaliation, I think there is a lot of circumstantial evidence regarding did Mr. Dove experience retaliation. If you just look through the timeline of the events that occurred. On January 19th, Mr. Dove makes his complaint to award a night. On January 21st, 2022, Knight contacts Andrick and tells him that she just wants to speak to him via phone. She will not communicate with him via email. And then February 15th, 2022, a second complaint is then made to the commissioners. And then February 17th, 2022, Knight follows up with Andrick and says, has he moved out yet? And that's all in the same email thread. So it comes to surmise that the first phone call was regarding Ms. Morden Knight informing Andrick that Mr. Dove needed to move out. If you just look at the email thread that was provided. And then on February 23rd, 2022, Mr. Dove is told that he must vacate by March 1st. There's nothing from the record that states that Andrick was the decision maker in making him determine that he needed to move out. I think to the contrary, to a certain extent, it is on the record that Morden Knight was the decision maker in allowing him to have the housing. So it was surmised that she also was the decision maker in regards to him leaving the housing as well. Your Honor, judges, thank you all for this time. And we ask that you all reverse your amendments for trial. Okay, thank you. We thank the parties and take the case under advisement.